UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
                                  :
FAMIAN CORNADO, a/k/a "Fermin
Coronado,"[1]                     :

            Petitioner,      :    10 Civ. 5265 (RA)(HBP)

      -against-              :     REPORT AND
                                  RECOMMENDATION
JOSEPH BELLNIER, Superintendent of :
Marcy Correctional Facility,
                                  :
            Respondent.      :
                                  :
----------------------------------X

            PITMAN, United States Magistrate Judge:

            TO THE HONORABLE RONNIE ABRAMS, United States District

Judge,


I.  Introduction

            Petitioner Famian Cornado seeks, by his pro se petition

for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, an

Order vacating a judgment of conviction imposed on June 26, 2007

after a jury trial, by the Supreme Court of the State of New

York, New York County (McLaughlin, J.), for one count of assault

in the second degree, in violation of New York Penal Law Section

120.05(2) (Petition for a Writ of Habeas Corpus, dated July 6,

---

[1] Petitioner has used both names in his submissions to the
court.

2010 ("Petition"), Docket Item 2, at 1).  Pursuant to that judgment, petitioner was sentenced to a determinate term of imprisonment of five years, with three years of post-release supervision.  Petitioner is currently serving his term of post-release supervision.

For the reasons set forth below, I respectfully recommend that the petition be denied.

II.  <u>Facts</u>

A.    Facts Giving Rise to
      <u>Petitioner's Conviction</u>

Petitioner's conviction arises out of an assault that took place in the vicinity of 106th Street and Franklin D. Roosevelt East River Driver ("FDR Drive") in July 2006.  The evidence offered at trial established the following facts.

On July 29, 2006, Peter Rodriguez was attending a family barbeque on a pier on the East River near 106th Street and the FDR Drive (Brief for Defendant-Appellant ("Pet. App. Br."), annexed as Exhibit B to Declaration in Opposition to the Petition for a Writ of Habeas Corpus, filed Dec. 6, 2010 ("Gill Decl."), Docket Item 9, at 4-5; Memorandum of Law in Opposition to Petition for a Writ of Habeas Corpus, filed Dec. 6, 2010 ("Opp'n Memo.") Docket Item 8, at 5).  At around 9:00 p.m., Rodriguez was

sitting near a grill where his stepfather, Hector Sierra, was standing and cooking (Pet. App. Br. at 4-5; Opp'n Memo. at 6). Rodriguez was smoking a cigarette with his friend, Jose Melendez, when he was approached by petitioner, who had not been invited to the barbeque and was unknown to Rodriguez (Pet. App. Br. at 5-6; Opp'n Memo. at 6). Petitioner asked Rodriguez for a cigarette, and Rodriguez informed him that they did not have any more to offer (Pet. App. Br. at 6; Opp'n Memo. at 6). Petitioner would not leave, and when Rodriguez stood up to speak with him further, petitioner struck him in the face with a lock or other small metal object (Pet. App. Br. at 6-7; Opp'n Memo. at 6). After petitioner struck Rodriguez, several witnesses attempted to detain petitioner, but were unable to do so (Pet. App. Br. at 7; Opp'n Memo. at 6-7). Petitioner fled across the FDR Drive and was struck by a car and mildly injured as he crossed (Pet. App. Br. at 7; Opp'n Memo. at 7).

The police responded to the scene at approximately 9:15 p.m. and observed petitioner crossing the FDR Drive (Pet. App. Br. at 7-8; Opp'n Memo. at 7). They also observed a group of approximately thirty people on the east side of the FDR Drive yelling and pointing at petitioner (Pet. App. Br. at 8; Opp'n Memo. at 7). Petitioner approached the police officers, who

ordered him to sit down on the curb while they spoke with
witnesses to the event (Pet. App. Br. at 8; Opp'n Memo. at 7-8).

    The officers observed Rodriguez's injuries and spoke
with Rodriguez and other witnesses (Pet. App. Br. at 8; Opp'n
Memo. at 7-8).  Rodriguez identified petitioner as the man who
struck him by pointing to him from across the street (Pet. App.
Br. at 8-9; Opp'n Memo. at 8).  The officers called for medical
assistance, and accompanied Rodriguez, his mother, and his
daughter, Faye Melendez, across the FDR Drive to an ambulance
parked near petitioner (Pet. App. Br. at 8; Opp'n Memo. at 8).
When they were near petitioner, an officer asked Rodriguez if
petitioner was the man who struck him (Pet. App. Br. at 8; Opp'n
Memo. at 8).  Rodriguez, his mother, and his daughter all
answered in the affirmative.  Petitioner was then placed under
arrest (Pet. App. Br. at 8-9; Opp'n Memo. at 8-9).  The officers
were unable to recover the lock or a similar object from the
scene (Pet. App. Br. at 9).

    B.   Trial Court Proceedings

    Petitioner's trial began on May 30, 2007 (Gill Decl.
Exh. A).  The prosecution's case largely consisted of testimony
establishing the foregoing events.  Petitioner argued that it was
he, not Rodriguez, who was assaulted, and that the assault was

motivated by a mistaken belief that he had stolen property from his assailants, whom he could not identify (Pet. App. Br. at 4).

During the trial, the prosecution and the defense orally stipulated that, if called, Nelson LaSalle, a private investigator, would have testified "that, on May 22, 2007, he talked with Rodriguez, who said that he and his friends held down petitioner until the police arrived" (Pet. App. Br. at 9).

The Court instructed the jury on the elements of assault in the second degree and assault in the third degree, a lesser included offense (Pet. App. Br. at 9-10).  Before deliberations began, petitioner's counsel agreed that the jury could request exhibits during deliberations (Pet. App. at 10).  The jury began deliberating at approximately 10:30 a.m. on June 4, 2007 (Pet. App. Br. at 9-10).

1.    The Jury Notes

During the course of deliberations, the jury submitted nine notes to the Court.  The first three notes, marked as Court Exhibits 2, 3, and 4, were submitted during the morning of June 4, 2007 and requested three exhibits:  "the medical examiner

report", "the stipulation,"[2] and a picture of Rodriguez's
injuries (Pet. App. Br. at 10; Gill Decl. Exh. A).

       In the afternoon, the jury submitted several more
notes.  In the note marked as Court Exhibit 5, the jury requested
a readback of "Peter [Rodriguez] and Hector[] [Sierra's]
testimony transcript of their description of the event during
cross and direct examination," and "Hector[] [Sierra's]
description of the light conditions during cross and direct"
(Pet. App. Br. at 11; Gill Decl. Exh. A).  The note marked as
Court Exhibit 6 requested the readback of testimony from
Rodriguez, Sierra, and Faye Melendez, concerning when they "first
heard or saw the lock or metal object" (Pet. App. Br. at 11; Gill
Decl. Exh. A).  Although the Court's responses to these two notes
do not appear on the record, the jury was recalled during the
afternoon to have a portion of the testimony read back to them
because "[t]he court reporter found something more to answer in
your previous note" (Pet. App. Br. at 11-12).

       In another note, not marked as a Court Exhibit, the
jury inquired whether jurors were allowed to take notes during
deliberations (Pet. App. Br. at 11).  The Court instructed the

---

      [2] The jury was referring to the oral stipulation entered
into regarding the testimony of Nelson Lasalle (Opp'n Mem. 9-10).

jurors that they were allowed to take notes, but only for their own personal use (Pet. App. Br. at 19).[3]

In the note marked as Court Exhibit 7, the jury requested clarification as to whether it needed to come to a unanimous decision on the charge of assault in the second degree before considering the charge of assault in the third degree (Pet. App. Br. at 10; Gill Decl. Exh. A). The Court instructed the jury that it need only consider the charge of assault in the third degree if it unanimously concluded that petitioner was not guilty of assault in the second degree (Pet. App. Br. at 11-12).

In the note marked as Court Exhibit 8, the jury requested "pictures of the site," and a "[d]escription of lights over grill inside of roof in pier by any and all witnesses – not the lights on the sidewalk, FDR, nor general description of general lighting conditions" (Pet. App. Br. at 13; Gill Decl. Exh. A). The parties' submissions do not indicate whether the

---

[3] The Court's full instruction was as follows:

> You could take notes for your own individual use. This is the official record of the trial. You could take notes for your personal use. You can not [sic] share them. You can't disclose them. You can't leave them on the table during deliberations. And if there is any issue about what the record of the trial is, you [sic] got to rely on what he says, not what some individual note may say.

(Pet. App. Br. at 19).

Court took any action in response to this note (Pet. App. Br. at 13).

At 4:40 p.m., the jury delivered a final note to the Court, marked as Court Exhibit 9, indicating that it had reached a verdict (Pet. App. Br. at 13; Gill Decl. Exh. A).

### 2.   Verdict and Sentencing

On June 4, 2007, the jury found petitioner guilty of assault in the second degree (Pet. App. Br. at 13).  On June 26, 2007, petitioner was sentenced to an determinate term of imprisonment of five years with three years post-release supervision (Pet. App. Br. at 13).

### C.   Post-Conviction Proceedings

Petitioner, assisted by counsel, appealed his conviction to the Appellate Division of the Supreme Court for the First Department.  Petitioner asserted two claims on appeal:

> 1.   Whether the court committed reversible error when it (a) violated its core responsibility to provide meaningful notice to counsel and a response to the jury by failing to read into the record or respond to a jury note requesting testimony, and (b) also failed to follow proper procedure in handling additional substantive jury notes that were read for he first time in the presence of the jury. U.S. Const. Amends. VI, XIV; N.Y. Const. Art. I, § 6; C.P.L. §310.30.

> 2.   Whether [petitioner's] five-year sentence is
>       excessive and should be reduced in the interest of
>       justice.

(Pet. App. Br. at 2).

As to the first claim, petitioner argued that the Trial Court's "complete disregard" of the jury note marked as Court Exhibit 8 violated his rights under New York Criminal Procedure Law Section 310.30,[4] as construed by People v. O'Rama, 78 N.Y.2d 270, 579 N.E.2d 189, 574 N.Y.S.2d 159 (1991) and People v. Kisoon, 8 N.Y.3d 129, 863 N.E.2d 990, 831 N.Y.S.2d 738 (2007). Petitioner further argued that the Trial Court mishandled additional "substantive" jury notes by responding to them without first consulting counsel (Pet. App. Br. at 18-22).  In the alternative, petitioner argued that if the Appellate Division

---

[4] New York Criminal Procedure Law Section 310.30 provides:

> At any time during its deliberation, the jury may request the court for further instruction or information with respect to the law, with respect to the content or substance of any trial evidence, or with respect to any other matter pertinent to the jury's consideration of the case.  Upon such a request, the court must direct that the jury be returned to the courtroom and, after notice to both the people and counsel for the defendant, and in the presence of the defendant, must give such requested information or instruction as the court deems proper.  With the consent of the parties and upon the request of the jury for further instruction with respect to a statute, the court may also give to the jury copies of the text of any statute which, in its discretion, the court deems proper.

found significant ambiguity on the record, it should order a reconstruction hearing (Pet. App. Br. at 22-23).

Petitioner's second claim, that his sentence was excessive, was based on decisions of New York state courts made pursuant to New York Criminal Procedure Law Section 470.15(3)(c), which permits the Appellate Division to modify sentences "[a]s a matter of discretion in the interest of justice" (Pet. App. Br. at 23).  Petitioner argued that since he was a first-time violent offender, a Cuban refugee, a substance abuser, and suffering from certain mental health issues, his sentence of five years of incarceration and three years of post-release supervision, while within the permissible sentencing range, was excessive (Pet. App. Br. at 23-26).

The Appellate Division affirmed petitioner's conviction on March 10, 2009, stating, in pertinent part:

> The record indicates that shortly before the jury announced that it had reached a verdict, the court received a note requesting certain photographs received into evidence and a readback of testimony.  Nothing in the record bears on the issue of whether the court read this note to counsel; the court did not respond to it before accepting the verdict.  We conclude that defendant has failed to present on this appeal a record that is adequate to permit review of his claim (see People v Kinchen, 60 NY2d 772 [1983]) that the court violated the precepts set forth in People v O'Rama (78 NY2d 270, 277-278 [1991]).  Although this failure alone is sufficient to reject defendant's argument, we note that defendant has not established any prejudice (see People v Agosto, 73 NY2d 963, 966 [1989]).  By promptly

10

reaching a verdict without any further inquiry, the
jury implicitly indicated that it no longer needed the
information requested (see People v Fuentes, 246 AD2d
474, 475 [1998], lv denied 91 NY2d 941 [1998]).  We
also note that the note in question asked for a
readback of testimony about lighting conditions, and
the jury had already received a readback on that
subject.

Defendant also contends that the court failed to
follow the steps set forth in People v O'Rama with
respect to two other jury inquiries.  Although the
court reporter apparently was not present when the
court informed the parties about the content of this
note, it is clear from the record that the court did
disclose the contents of each of these inquiries in
open court before responding.  Accordingly, it
fulfilled its "core responsibility" under People v
Kisoon (8 NY3d 129, 135 [2007]) and there was no mode
of proceedings error exempt from preservation
requirements (see e.g. People v Starling, 85 NY2d 509,
516 [1995]; People v Snider, 49 AD3d 459 [2008], lv
denied 11 NY3d 795 [2008]).  We decline to review
defendant's unpreserved claim in the interest of
justice.  As an alternative holding, we find no basis
for reversal.  The record supports the conclusion that
counsel received a suitable opportunity for input into
the court's responses.  Two of the inquiries at issue
requested routine readbacks, and these requests were
not likely to require significant input from counsel.
The third asked whether the jurors could take notes,
and the court gave the jury appropriate instructions on
that subject.  While we do not find that the court's
handling of any of the jury inquiries in this case
requires reversal, nevertheless, as the Court of
Appeals stated in Kisoon, "we underscore the
desirability of adherence to the procedures outlined in
O'Rama" (8 NY3d at 135).

We find no basis for a reconstruction hearing as
to any of the issues presented on appeal.

We perceive no basis for reducing the sentence.

11

People v. Cornado, 60 A.D.3d 450, 451-52, 874 N.Y.S.2d 463, 464-65 (1st Dep't 2009).

By letter dated March 16, 2009 petitioner, again assisted by counsel, sought leave to appeal to the New York Court of Appeals (Letter to Hon. Jonathan Lippman, dated Mar. 16, 2009, annexed as Exhibit F to Gill Decl.).  The New York Court of Appeals denied petitioner's application without opinion on June 12, 2009.  People v. Cornado, 12 N.Y.3d 913, 912 N.E.2d 1075, 884 N.Y.S.2d 694 (2009).

D.    The Pending Petition

On July 9, 2009, petitioner, proceeding pro se, filed the pending petition, asserting the same two claims that were raised on direct appeal, namely, that (1) the Trial Court failed to follow proper protocol with respect to the jury notes, in violation of "U.S. Const. Amends. VI, XIV; N.Y. Const. Art. I, § 6; C.P.L. §310.30," and that (2) his five-year sentence is excessive and should be reduced in the interest of justice (Petition at 5).  Though large portions of the habeas petition are copied verbatim from petitioner's appellate brief, petitioner does not appear to include any legal arguments or analysis in his petition, other than the headings referenced above. Nevertheless, recognizing petitioner's pro se status, I shall

12

assume for purposes of this Report and Recommendation that petitioner intended to incorporate all of the legal analysis and references from his appellate brief into his habeas petition.

III.  <u>Analysis</u>

    A.  Jury
        <u>Notes Claim</u>

      It is fundamental that habeas corpus relief is available in federal court only when an individual is incarcerated in violation of a federally protected right.  28 U.S.C. § 2254(a); <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); <u>Howard v. Walker</u>, 406 F.3d 114, 121 (2d Cir. 2005) (noting that a claim that a conviction was obtained in violation of state law is not cognizable in federal court); <u>see</u> <u>also</u> <u>Adams v. Greiner</u>, 02 Civ. 6328 (GEL), 2004 WL 912085 at *2 (S.D.N.Y. Apr. 29, 2004)(Lynch, D.J.)("Habeas corpus is not an extension of the appeals process in the state court. Rather, it is a remedy for violations of a defendant's rights under the federal constitution, and a very narrow remedy at that.").  Violations or errors of state law or procedure generally do not constitute grounds for habeas review.  <u>Estelle</u>

v. McGuire, supra, 502 U.S. at 68, citing Lewis v. Jeffers, 497
U.S. 764, 780 (1990) and Pulley v. Harris, 465 U.S. 37, 41, 104
S.Ct. 871, 874-75, 79 L.Ed.2d 29 (1984).

A claim premised on a violation of New York Criminal
Procedure Law Section 310.30 does not allege a violation of a
federally protected right.  See Garcia v. Lee, 10 Civ. 5287
(JPO)(JLC), 2012 WL 3822137 at *16 (S.D.N.Y. Aug. 28, 2012)(Cott,
M.J) (Report & Recommendation); Johnson v. Graham, 09 Civ. 5838
(SAS)(KNF), 2010 WL 3855286 at *5 (S.D.N.Y. Oct. 1,
2010)(Sheindlin, D.J.)("[W]hether or not this failure [to comply
with Criminal Procedure Law Section 310.30] constituted
reversible error in the state court, petitioner's 'jury note'
claim does not implicate a federally protected constitutional
right."); Council v. Connell, 08 Civ. 11357 (LTS)(KNF), 2010 WL
1140879 at *7 (S.D.N.Y. Mar. 25, 2010)(Fox, M.J.)(Report &
Recommendation)("Since [the claim that Criminal Procedure Law
Section 310.30 was violated] is grounded in New York's CPL and
does not implicate the Constitution, laws or treaties of the
United States, this claim is not amenable to federal habeas
corpus review."), adopted, 08 Civ. 11357, 2010 WL 2884746
(S.D.N.Y. July 20, 2010)(Swain, D.J); Quezada v. Nichols, 04 Civ.
2765 (RJH)(RLE), 2008 WL 818566 at *8 (S.D.N.Y. Mar. 26,
2008)(Holwell, D.J.)(adopting Report & Recommendation of Ellis,

M.J)("To the extent that Quezada claims that the trial court violated the requirements of New York Criminal Procedure Law Section § 310.30, the Court may not review the merits of this claim on habeas review.").

Petitioner cites to no federal authority in either his appellate brief or habeas petition in support of his jury note claim, aside from a single passing reference to the Sixth and Fourteenth Amendments in a heading.  Much like the petitioner in Johnson, petitioner "does not cite Supreme Court precedent or any other federal cases.  Rather, [he] cites section 310.30 of the New York Criminal Procedure Law [] as setting forth jury note protocol, followed by citations to People v. O'Rama and People v. Kisoon, cases where the New York Court of Appeals applied section 310.30." Johnson v. Graham, supra, 2010 WL 3855286 at *5. Because petitioner alleges nothing more than a possible violation of New York Criminal Procedure Law Section 310.30, he has not raised a claim that is cognizable on federal habeas corpus review.  Petitioner's perfunctory reference to the Sixth and Fourteenth Amendments in a heading does not warrant a different outcome.  See Gray v. Netherland, 518 U.S. 152, 163 (1996)("[I]t is not enough to make a general appeal to a constitutional guarantee as broad as due process to present the 'substance' of such a claim to a state court."); see also DeLeon v. Duncan, 99

15

Civ. 9086 (RCC)(RLE), 2002 WL 1997892 at *2 (S.D.N.Y. Aug. 28, 2002).

Therefore, petitioner's claim based on the mishandling of jury notes by the Trial Court in violation of New York law is barred from review and cannot provide a basis for relief.[5]

B. Excessive
Sentence Claim

Petitioner's second ground for habeas relief is that the sentence imposed on him was excessive.

Petitioner does not specify the Constitutional right he believes was violated by his sentence. Rather, Petitioner's appellate brief argues only that the sentence was excessive because petitioner was a Cuban refugee with no history of violence who suffered from mental health and substance abuse issues (Pet. App. Br. at 23). Petitioner's appellate brief does not, however, contend that his sentence violates any right protected by federal law. Petitioner did not, therefore, properly exhaust his state court remedies with respect to any constitutional claim concerning his sentence, and his state law claim that his sentence should be reduced in the interests of

---

[5] I express no opinion as to whether or not New York Criminal Procedure Law Section 310.30 was actually violated.

16

justice is not cognizable.  See Stallings v. Woods, 04 CV 4714
(RLM), 2006 WL 842380 at *22 (E.D.N.Y. Mar. 27, 2006), citing
Medina v. Greene, 03 Civ. 8646 (DC), 2004 WL 2809196 at *4
(S.D.N.Y. Dec. 7, 2004) (Chin, then D.J., now Cir. J.)
(petitioner "did not fairly present the excessive sentence claim
in federal constitutional terms" by appealing to the Appellate
Division's power under N.Y. Crim. Proc. Law § 440.15, to reduce
an excessive sentence in the interest of justice); Rivera v.
Greiner, 272 F. Supp. 2d 197, 201 (E.D.N.Y. 2003); see also White
v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992) (per curiam), citing
McCleskey v. Zant, 499 U.S. 467 (1991); and Rose v. Lundy, 455
U.S. 509 (1982).

     Although petitioner has not explicitly argued either
here or in state court that his sentence violated his rights
under the United States Constitution, even if I read petitioner's
appellate brief as raising an Eighth Amendment claim there is no
merit to this claim.[6]  A sentence violates the Eighth Amendment
when the sentence is "grossly disproportionate" to the crime
committed or when the sentence imposed "shocks the collective
conscience of  society."  United States v. Gonzalez, 922 F.2d

---

     [6] Although any federal claim concerning petitioner's
sentence is unexhausted, I may, nevertheless, consider the claim
on the merits to deny the claim.  28 U.S.C. § 2254(b)(2).

1044, 1053 (2d Cir. 1991); see Kennedy v. Louisiana, 554 U.S. 407, 420-21 (2008); Atkins v. Virginia, 536 U.S. 304, 311 (2002); see also Lockyer v. Andrade, supra, 538 U.S. at 73-76; Harmelin v. Michigan, 501 U.S. 957, 1001 (1991); United States v. Snype, 441 F.3d 119, 152 (2d Cir. 2006); United States v. Romano, 825 F.2d 725, 731 (2d Cir. 1987); Pressley v. Bennett, 235 F. Supp. 2d 349, 368-69 (S.D.N.Y. 2003) (Berman, D.J.); Calderon v. Keane, 97 Civ. 2116 (RCC)(JCF), 2002 WL 1205745 at *14 (S.D.N.Y. Feb. 21, 2002)(Francis, M.J.)(Report & Recommendation), adopted, 2003 WL 22097504 (S.D.N.Y. Sept. 9, 2003) (Duffy, D.J.); Sutton v. Herbert, 39 F. Supp. 2d 335, 337 (S.D.N.Y. 1999) (Conner, D.J.).

Petitioner was convicted of assault in the second degree, a class D violent felony, which required the Trial Court to sentence him to a determinate term of two to seven years incarceration followed by a term of post-release supervision ranging from one and one-half to three years.  See N.Y. Penal Law §§ 120.05(2); 70.02(1)(c); 70.02(3)(c); 70.45(2)(e).  Petitioner was sentenced to five years of incarceration followed by three years of post-release supervision (Pet. App. Br. at 24).  A sentence within the range established by state law, as the sentence here clearly was, is ordinarily not subject to an Eighth Amendment challenge.  See White v. Keane, supra, 969 F.2d at 1383 ("No federal constitutional issue is presented where . . . the

sentence is within the range prescribed by state law."); Diaz v. Herbert, 317 F. Supp. 2d 462, 479-80 (S.D.N.Y. 2004) (Marrero, D.J.); Mayo v. Burge, 02 Civ. 10192 (NRB), 2003 WL 21767767 at *6 (S.D.N.Y. July 30, 2003) (Buchwald, D.J.); Brown v. Goord, 02 Civ. 2122 (NRB), 2002 WL 31093611 at *5 (S.D.N.Y. Sept. 13, 2002) (Buchwald, D.J.); Espinal v. Barkely, 95 Civ. 1214 (HB), 1996 WL 673833 at *1 (S.D.N.Y. Nov. 20, 1996) (Baer, D.J.); Rodriguez v. O'Keefe, 96 Civ. 2094 (LLS), 1996 WL 428164 at *7 (S.D.N.Y. July 31, 1996) (Stanton, D.J.), aff'd mem., 122 F.3d 1057 (2d Cir. 1997).

As stated by the Supreme Court, a habeas court will find that a state-law sentence is "grossly disproportionate" and violates the Eighth Amendment only "in the 'exceedingly rare' and 'extreme' case." Lockyer v. Andrade, supra, 538 U.S. at 73, quoting Harmelin v. Michigan, supra, 501 U.S. at 1001; accord Ewing v. California, 538 U.S. 11, 21 (2003); United States v. Snype, supra, 441 F.3d at 152; Whitlatch v. Senkowski, 344 F. Supp. 2d 898, 905-07 (W.D.N.Y. 2004); Vasquez v. Walker, 01 Civ. 8032 (AKH), 2004 WL 594646 at *5 (S.D.N.Y. Mar. 25, 2004) (Hellerstein, D.J.); Ayala v. People, 03 Civ. 2762 (AKH), 2004 WL 527035 at *5 (S.D.N.Y. Mar. 16, 2004) (Hellerstein, D.J.); Williams v. Philips, 02 Civ. 5811 (DC), 2003 WL 21961127 at *8 (S.D.N.Y. Aug. 18, 2003) (Chin, then D.J., now Cir. J.).  Other

courts have reviewed sentences similar to that imposed upon
petitioner for comparable offenses and have uniformly upheld such
sentences as consistent with the Eighth Amendment.  Witt v.
Racette, 10 Civ. 9180 (JPO), 2012 WL 3205177 at *11 (S.D.N.Y.
Aug. 7, 2012)(Oetken, D.J.)(rejecting challenge to sentence of
seven years with three years post-release supervision for single
count of assault in the second degree); Hutchinson v. Unger, 10
CV 2385 (MKB), 2012 WL 3027845 at *6 (E.D.N.Y. July 23,
2012)(rejecting challenge to concurrent terms of six years and
five years incarceration for two counts of assault in the second
degree); Allaway v. McGinnis, 301 F. Supp. 2d 297, 301 (S.D.N.Y.
2004)(Marrero, D.J.)(rejecting challenge to sentence of twenty-
five years to life for single count of assault in the second
degree when defendant adjudicated persistent violent offender).

        Thus, petitioner's sentencing claim also fails to
provide a basis for habeas corpus relief.

IV.  Conclusion

        Accordingly, for all the foregoing reasons, I
respectfully recommend that the petition be denied in all
respects.

        In addition, because petitioner has not made a
substantial showing of the denial of a constitutional right, I

20

also recommend that a certificate of appealability not be issued.
28 U.S.C. § 2253.  To warrant the issuance of a certificate of
appealability, "petitioner must show that reasonable jurists
could debate whether . . . the petition should have been resolved
in a different manner or that the issues presented were adequate
to deserve encouragement to proceed further."  Middleton v.
Attorneys Gen., 396 F.3d 207, 209 (2d Cir. 2005) (per curiam)
(citation and internal quotation marks omitted); see also Love v.
McCray, 413 F.3d 192, 195 (2d Cir. 2005) (per curiam).  For the
reasons set forth above, I conclude that there would be no
difference of opinion among reasonable jurists that petitioner's
federal rights were not violated.

      I further recommend that certification pursuant to 28
U.S.C. § 1915(a)(3) not be issued because any appeal from this
Report and Recommendation, or any Order entered thereon, would
not be taken in good faith.  See Coppedge v. United States, 369
U.S. 438, 445 (1962).

V.  Objections

      Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72(b) of
the Federal Rules of Civil Procedure, the parties shall have
fourteen (14) days from receipt of this Report to file written
objections.  See also Fed.R.Civ.P. 6(a).  Such objections (and

responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable Ronnie Abrams, United States District Judge, 500 Pearl Street, Room 620, and to the Chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007.  Any requests for an extension of time for filing objections must be directed to Judge Abrams.  FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND **WILL** PRECLUDE APPELLATE REVIEW. Thomas v. Arn, 474 U.S. 140, 155 (1985); United States v. Male Juvenile, 121 F.3d 34, 38 (2d Cir. 1997); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v.Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-238 (2d Cir. 1983).

Dated:  New York, New York
        September 20, 2012

                              Respectfully submitted,


                              HENRY PITMAN
                              United States Magistrate Judge


Copies mailed to:

Mr. Fermin Coronado
1 Schwarz Next Stop Program Ward Island
New York, New York  10035

Alyson J. Gill, Esq.
Assistant Attorney General
State of New York
120 Broadway
New York, New York  10271